**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**CLARA C. GAITHER**                                                    **PLAINTIFF**


**v.**                          **NO. 4:23-cv-00777-PSH**


**MARTIN O'MALLEY, Commissioner**                      **DEFENDANT**
**of the Social Security Administration**


## MEMORANDUM OPINION AND ORDER


In this case, plaintiff Clara C. Gaither ("Gaither") challenges whether she actually applied for retirement benefits on September 1, 2020, and, alternatively, challenges the denial of her request for retroactive retirement benefits. She also challenges the cancellation of her dental coverage with Delta Dental. Gaither does so on the grounds that the findings of an Administrative Law Judge ("ALJ") are not supported by substantial evidence on the record as a whole and that legal error occurred.[1] Because substantial evidence on the record as a whole supports the ALJ's findings, and no legal error occurred, his decision is affirmed.

---

[1]     The questions for the Court are whether the ALJ's findings are supported by substantial evidence on the record as a whole and whether legal error occurred. See Sloan v. Saul, 933 F.3d 946 (8th Cir. 2019).

The record reflects that in 2012, or when Gaither was fifty-five years old, she began receiving supplemental security income payments.[2] The amount of the payments was approximately $800.00 a month.

On September 1, 2020, Gaither had a telephone conversation with James Jones ("Jones"), a Social Security Administration Claims Specialist.[3] Gaither understood the purpose of the conversation to be a "re-certification," or a review of her continued entitlement to supplement security income payments. See Docket Entry 16 at CM/ECF 33.[4] Gaither did not understand the purpose of the conversation to be her entitlement to, or request for, retirement benefits, and she is adamant that she did not intend to apply for retirement benefits at that time.

---

[2]    Gaither appears to have been awarded the payments in 2012, see Docket Entry 16 at CM/ECF 47, but did not begin receiving them until 2013, see Docket Entry 16 at CM/ECF 32.

[3]    Gaither identifies the specialist as "James Jones," see Docket Entry 2 at CM/ECF 4, although Gaither occasionally refers to him as "Mr. James," see Docket Entry 16 at CM/ECF 25. The Commissioner of the Social Security Administration represents that the name of the specialist is actually "Mr. James." See Docket Entry 22 at CM/ECF 4. Because the Court will quote liberally from Gaither's pleadings, and the Court desires to maintain some consistency with her pleadings, the Court will refer to the Claims Specialist as "Jones."

[4]    The Commissioner of the Social Security Administration represents that a "re-certification" is a "non-medical determination under 20 C.F.R. 416.204(a)." See Docket Entry 22 at CM/ECF 4. 20 C.F.R. 416.204(a) provides, in part, that a "re-determination" is a "review of [the claimant's] eligibility to make sure that [she is] still eligible and that [she is] receiving the right amount of [supplemental security income] benefits. ..."

On the heels of the September 1, 2020, conversation, an Application Summary for Retirement Insurance Benefits ("Summary") was prepared by the Social Security Administration. The Summary was sent to Gaither and contained several representations relevant to this case. First, the Summary confirmed that she had applied for "social security benefits" and was applying for "all insurance benefits for which [she is] eligible under Title II (federal old-age, survivors, and disability insurance) and Part A of Title XVIII (health insurance for the aged and disabled) of the Social Security Act ..." See Docket Entry 16 at CM/ECF 102. Second, the Summary provided that Gaither wanted the benefits to begin "with the earliest possible month based on [her] earnings. See Docket Entry 16 at CM/ECF 103. Last, the Summary provided that she was to notify the Social Security Administration within ten days of receiving the Summary if she disagreed with any representation contained in it.

In a letter dated September 15, 2020, the Mid-America Program Service Center ("Service Center") notified Gaither that she is entitled to "monthly retirement benefits" beginning in September 2020, and the monthly benefit would be approximately $1,000. See Docket Entry 16 at CM/ECF 52. She was also notified that the benefits were the only benefits she could receive from the Social Security Administration at that time.

The Service Center subsequently notified Gaither of a slight increase in her monthly retirement benefit. In the notice, she was also informed that "[t]he State of Arkansas [would] no longer pay [her] Medicare Part B (medical insurance) premiums after October [of] 2020," see Docket Entry 16 at CM/ECF 60, and it would be necessary for her to pay the premiums beginning in November of 2020.

Gaither asked the Service Center to reconsider its decision. See Docket Entry 16 at CM/ECF 56-57, 59. The Service Center understood her request for reconsideration to involve the timing of her entitlement to retirement benefits and denied her request for the following reason:

> On September 2020, you applied for retirement benefits from Social Security and on about September 15, 2020, you were told that your entitlement had started with September 2020. On October 20, 2020, you asked for reconsideration because you believe that your entitlement to retirement benefits should have started earlier because you were not aware that you were eligible for retirement benefits at an earlier time.
>
> ...
>
> Since you were under full retirement age at the time you filed your application, your initial month of entitlement to retirement benefits can be no earlier than September 2020, the month in which you filed your application.

See Docket Entry 16 at CM/ECF 63.

Gaither then requested a hearing before an ALJ. She requested the hearing for the following reason:

> [The] Social Security Administration contacted me [in] September 2020 and informed me that as of 1-22-20, the only benefits I'm entitled to receive from social security are social security retirement benefits, yet declined to pay me the social security retirement benefits I'm entitled [to] beginning from 1-22-20.

See Docket Entry 16 at CM/ECF 67.[5]

The ALJ subsequently conducted a hearing. See Docket Entry 16 at CM/ECF 29-40. The ALJ began the hearing by observing that the issue was "whether [Gaither is] entitled to an earlier onset of her retirement benefits." See Docket Entry 16 at CM/ECF 29-30. The ALJ asked Gaither why she believed she had been wronged, and she testified as follows:

> A. ... I didn't actually apply for the retirement benefits. It was someone at Social Security, the Social Security Administration that submit, submitted all the -- what it was necessary for me to transfer my benefits from Social Security Disability to Social Security Retirement and, but they -- when they did that, they started it in October of 2020, rather than starting it when I was eligible for it in January 22, 2019.
>
> Q. Okay. So, what happened?

---

[5]    It is possible that her reason for requesting a hearing contains a typographical error. The phrase "yet declined to pay me the social security retirement benefits I'm entitled [to] beginning from 1-22-20," see Docket Entry 16 at CM/ECF 67, might be better understood to mean beginning from 1-22-19, i.e., her sixty-second birthday.

A. -- there was a –

Q. Just let me explain too. What typically happens is when you're getting disability benefits at age 65, they start drawing the, the benefits from the retirement fund instead of the disability trust fund. So, there, there should be no reduction in benefits. It's just transferred to a different pot of money because of your age.

A. I did it, I did it -- I was 62.

Q. Okay. So, you were sixty-two, two years old when this transfer was done?

A. Well, that's when I was told that I was eligible for it, to get done, but that I, that I didn't initiate the application for it to get done when I was eligible for this age 62 because I was have doctor's appointments and I didn't want to disrupt my -- I had a feeling that it was gonna have effect on my insurance if I did that, so I didn't do that just 'cause I had appointments coming up. And, of course, someone this gentlemen by the name of Mr. James, at Social Security. He called me on the phone, and I thought he was doing just a re-certification. I was actually in Ohio on a family emergency trip when I was answering all the questions because he was doing -- he actually transferred my benefits from Social Security Disability to Social Security Retirement, supplemental retirement, I think it was. And then sure enough, when I went to the, Dr. Shepherd, I seen his dental work on one of my cousins I had, and when I got there my dental -- because that was changed he wouldn't, he wouldn't accept the dental that -- I no longer had the type of insurance that he accepted once they did that change and I, I filed a complaint for unfair treatment. Because they was gonna take the initiative upon themselves to transfer my benefits from Social Security Disability to Social Security Retirement supplement -- why wasn't it, why wasn't it done when I was actually eligible for it? And that's why I filed the unfair treatment.

Q. What did you have before, Medicaid or Medicare?

A. I had Medicaid and Medicare, but I had -- Medicaid was allowing me to have this Delta Dental. And then once it was transferred over to the Social Security Supplemental Retirement they would no longer -- that discontinued my Delta Dental so that I didn't have the option to go to Dr. -- I actually went to Dr. Shepherd, and they had ran it and found it out the coverage that I no longer had Delta Dental so I could -- they could not see me because they did not accept my, my insurance then.

Q. Do you have any dental coverage right now?

A. I've got dental coverage, yes.

Q. It's just not Delta Dental.

A. It's not Delta Dental and the -- it's, it's very hard, it's been very hard to find a good dentist down from -- in Arkansas and once I started dental work I -- my [INAUDIBLE] I, and I found out that he accepted my dental which I had to travel from Little Rock to Pine Bluff to get them and then that, that was one of my -- that's one of my biggest complaints right there. That is the number one complaint.

Q. Yeah, you have two of them it looks like. One is that you should have got transferred earlier to the retirement fund and then the second is once you were retired, re-transferred that you shouldn't have not lost your dental. Correct?

A. Yes, that's right. Well, that's the way it goes -- once he transferred me --

Q. -- I, I understand. I'm just trying to clarify that you have really two issues before me. You're complaining about two things, correct?

A. Yes, sir. That is, that is correct, sir.

Q. All right. So, basically, they, they moved you over to the retirement fund in September of 2020. You're saying it should have happened earlier --

A. -- yes --

Q. -- in January 2019. How did you come up with January 2019? Is that when you were 62?

A. That's when, that's when -- I said -- yeah, yeah. That was when I became eligible to be transferred over to that.

Q. Okay, but how were you harmed by them doing it in 2020 as opposed to 2019? Did – you didn't have a reduction in benefits. So, other than losing your dental insurance were you harmed in any other way?

A. I mean I would have had more benefits if, if they had did it, or, if, if, it is a reduction of benefits. But I didn't, wasn't allowed to get the benefits that I was entitled to if I was entitled to get them in January of 2019.

Q. Okay. How much were you getting in per month before they change you over to the retirement fund? What was your monthly benefit amount?

A. Geez, I think it was like eight hundred and something dollars. I, I would have to look it up, but it was, it was, it was, it was in the eight hundred -- I'm thinking like eight hundred and eighty something dollars.

Q. Okay. So, you were getting $880.00 --

A. -- [INAUDIBLE] --

Q. -- prior to the transfer.

A. Right.

Q. And then after the transfer you started getting $1.014.00 a month?

A. I think so. Then the $1,014 went up to one thousand, yeah, $1,014.00.

Q. Okay. So, you didn't, you didn't have a reduction in benefits, you actually had an increase in benefits of about two hundred bucks per month.

A. Yeah, yeah, right. [INAUDIBLE].

Q. Okay. So, you're – what you're saying is if they had done it when you first turned 62, January of '19, you would have had three more years of -- or however more years -- it's not really three years.

A. No.

Q. Let's see, one nineteen to twenty -- all right. So, about a year and eight months. Or about --

A. -- [INAUDIBLE] --

Q. Is that what you're saying?

A. That is correct, sir.

Q. Okay. All right. Okay. So, you were $1,014.00 back in, effective in September of '20. What, what are you getting right now? What do you get every month now?

A. $1,088.00 a month.

Q. Okay and do you have Medicare?

A. I do have Medicare and Medicaid?

Q. Okay. So, you still have both.

  A. Yes.

  Q. Okay, and did you see if they could put you back on Delta or did they say you couldn't get that anymore?

  A. They said I couldn't get that anymore.

See Docket Entry 16 at CM/ECF 32-37.

  The ALJ thereafter issued a written decision in which he addressed two issues: first, "whether [Gaither] is entitled to the difference in her monthly benefits that she did not begin to receive until October 2020," and second, "whether [she] is entitled to receive Medicare coverage for her dental coverage when the provider converts benefits." See Docket Entry 16 at CM/ECF 45. With respect to the first issue, the ALJ found that Gaither turned sixty-two on January 22, 2019, and could have applied for reduced retirement benefits at that time. Gaither, though, did not apply at that time. It was not until September 1, 2020, that she was deemed to have applied for retirement benefits. The ALJ found that Gaither is not entitled to retroactive retirement benefits for the twenty month period between January 22, 2019, and September 1, 2020. He so found because she had not filed for benefits until September 1, 2020, and there was no evidence she was mis-informed about her right to file an earlier application. With respect to the second issue, the ALJ found the following:

> As for [Gaither's] right to Medicare coverage, there is nothing in the Social Security Act that requires a provider to continue coverage if the Medicare state program chooses to convert coverage. [Gaither] is not entitled to continued coverage under her former Medicare Part B provider.

See Docket Entry 16 at CM/ECF 48.

Gaither appealed to the Appeals Council. She maintained that she did not intend to apply for retirement benefits on September 1, 2020. Gaither also sought a recording of her conversation with Jones to prove that Gaither did not intend to apply for such benefits. The Appeals Council found no reason to reverse the ALJ's decision and denied Gaither's appeal.

Gaither thereafter began this case by filing a pro se complaint pursuant to 42 U.S.C. 405(g). In the complaint, she alleged the following:

> September 2020, I received a call from Social Security Administration Representative, Mr. James Jones. Unknowingly, at the time, Mr. Jones was initiating the process to start my Social Security Supplement Retirement benefits. [The] Social Security Administration [has] continuously decline[d] to pay my full retirement benefits beginning from the time of eligibility, January 22, 2019.

See Docket Entry 2 at CM/ECF 4. She asked that she be awarded $5,072.00 in retroactive social security benefits and punitive damages in an equal amount.

The Commissioner of the Social Security Administration ("Commissioner") filed the transcript, or record, of the administrative proceedings. Gaither was then directed to file a brief in which she explained why the ALJ's decision is not supported by substantial evidence on the record as a whole.

Gaither filed the brief requested by the Court and accompanied the brief with an exhibit. In the brief, she represented, in part, the following:

> This case [arose] when ... Jones contacted the Plaintiff ... on ... September 1, 2020, asking the Plaintiff to verify personal information in her Social Security Disability File.

> The Defendant['s] nine page Court Transcript, exhibit B1D, ... falsely claims that the Plaintiff ... applied for her Social Security Disability to be transferred to Social Security Early Retirement.

> ...

> The Plaintiff's exhibit A1 ... documents ... the fax and successful fax transmission sent to the [A]ppeals Council ... [on] October 25, 2022, [and] demonstrates the Plaintiff's effort to obtain the substantial evidence of the recorded call ... Jones placed to the Plaintiff on/about September 1, 2020.

> ... Jones and the Plaintiff['s] ... recorded conversation is substantial evidence in this matter.

> There's no indication that the ALJ's unfavorable decision was based on taking the substantial evidence of the recorded conversations of ... Jones and the Plaintiff ... into account.

Defendant's Court Transcript Index, page 23, under the ISSUES segment states that the Plaintiff applied for retirement benefits, is absolutely not a fact and is not true. All the facts regarding this case/complaint cannot be reviewed, if all the facts, including the recorded conversations, aren't presented.

There is no paper trail of Plaintiff completing, signing and submitting an application applying for Early Social Security Retirement to replace her Social Security Disability benefits, at the time.

The defendant Social Security Administration is/was in possession of the substantial evidence. The ... conversations of ... Jones and [t]he Plaintiff ... recorded for September 1, 2020, ... and October 24, 2022, ... [were] not found in the Defendant['s] Transcript filed in this case.

See Docket Entry 18 at CM/ECF 1-2.

The Commissioner, in response, construed Gaither's brief to allege "two seemingly inconsistent positions." See Docket Entry 22 at CM/ECF 8. First, the Commissioner understood Gaither to allege that she did not intend to file an application for retirement benefits on September 1, 2020. Second, the Commissioner understood Gaither to also allege that she should be awarded retroactive retirement benefits for the twenty month period between January 22, 2019, and September 1, 2020. The Commissioner alleged that under either construction, Gaither is not entitled to relief. With respect to Gaither's claim for continued Medicare dental coverage, the Commissioner noted the following in a footnote:

> ... Gaither presented a concern to the ALJ about the effects of her entitlement to retirement insurance benefits on her dental insurance soon after that entitlement. ..., but does not renew that concern before this Court. She has waived any such claim. In any event, even assuming there was a connection between ... Gaither's entitlement to retirement insurance benefits and the loss of Delta Dental insurance, it is unclear how any injury-in-fact would be redressable by a judgment against the Commissioner. Nothing the Commissioner could do would allow ... Gaither to receive treatment from her preferred dentist in 2020 and 2021. Beyond that, Medicare beneficiaries are allowed to enroll in a new plan each year during open enrollment. ... Therefore, it is unclear how ... Gaither's *current* Medicare plan enrollment is fairly traceable to any alleged injury-in-fact.

See Docket Entry 22 at CM/ECF 12, n.3 (emphasis in original).

The review function of the Court in this instance is "extremely limited." See Simuel v. Apfel, 21 F.Supp.2d 941, 942 (E.D. Ark. 1998). The review function is limited to reviewing the administrative record to determine if the ALJ's decision is supported by substantial evidence on the record as a whole. The Court does not try the case de novo, does not substitute its judgment for that of the administrative finder of fact, and, save some compelling reason for considering additional evidence, does not consider additional evidence. See Id. See also Nelson v. Sullivan, 966 F.2d 363 (8th Cir. 1992) (if Appeals Council does not consider additional

evidence, reviewing court may remand case to Appeal Council if additional evidence is new and material).

The Court has reviewed the parties' pleadings and exhibits. The Court has also reviewed the administrative record in this case and the Commissioner's summation of the admittedly complex and involved regulations governing the case. On the basis of that review, the Court finds that substantial evidence on the record as a whole supports the ALJ's findings, and no legal error occurred. The Court so finds for the reasons that follow.

Gaither first maintains that she did not intend to apply for retirement benefits on September 1, 2020, the date on which she was deemed to have applied for them. In an attempt to support the assertion, Gaither asked the Appeals Council, and has now asked the Court repeatedly, to obtain a recording of her conversation with Jones.

Throughout the administrative process, Gaither maintained that she is entitled to retroactive retirement benefits for the period from January 22, 2019, to September 1, 2020. She did so in asking the Service Center to reconsider its decision to award her retirement benefits effective September 1, 2020; in requesting a hearing before the ALJ; and in the hearing before the ALJ. In fact, during the hearing, Gaither agreed that

the two issues for the ALJ's consideration were as follows: "[o]ne is that [Gaither] should have got[ten] transferred earlier to the retirement fund and then the second is once [she was] retired, re-transferred that [she] shouldn't have not lost [her] dental." See Docket Entry 16 at CM/ECF 35. It was not until Gaither asked the Appeals Council to review the ALJ's decision that Gaither, for the first time, alleged she did not intend to apply for retirement benefits on September 1, 2020. Given those facts, the Court is hesitant to consider an issue Gaither did not fully and fairly raise in the administrative process and the ALJ did not specifically address in his decision.

Notwithstanding the foregoing, and because the Commissioner addressed the assertion that Gaither did not intend to apply for retirement benefits on September 1, 2020, the Court will address the assertion. The Court begins by noting Gaither's repeated requests for a recording of her conversation with Jones. Gaither maintains that a recording will show that she did not intend to apply for retirement benefits at that time, and legal error occurred when the recording was not obtained.

The Court has no idea if a recording of Gaither's conversation with Jones exists, and, if a recording does exist, how it might be obtained. In the absence of such a recording, the Court simply assumes that a recording

would show Gaither did not intend to apply for retirement benefits on September 1, 2020.

Assuming Gaither did not intend to apply for retirement benefits on September 1, 2020, the Social Security Administration could nevertheless reasonably conclude that she did, in fact, apply for such benefits. The Court so finds for three reasons.

First, on the heels of Gaither's conversation with Jones, Gaither was sent a Summary reflecting the Social Security Administration's understanding of their conversation. In the Summary, Gaither was deemed to have applied for "all insurance benefits for which [she is] eligible under Title II (federal old-age, survivors, and disability insurance) and Part A of Title XVIII (health insurance for the aged and disabled) of the Social Security Act ..." See Docket Entry 16 at CM/ECF 102. She was also deemed to want the benefits to begin with the earliest possible month based on her earnings. She was cautioned that she was to notify the Social Security Administration within ten days of receiving the Summary if she disagreed with any representation contained in it. Sadly, Gaither did not notify the Social Security Administration at any time, let alone within ten days of receiving the Summary, that the Summary was not correct, and she did not intend to apply for retirement benefits at that time. Her failure to do so,

and her failure to raise the assertion until the last stage of the administrative process, brought her to this point.

Second, the Service Center sent Gaither a letter in which she was notified that she is entitled to "monthly retirement benefits" beginning in September of 2020, and the benefits were the only benefits she could receive at that time. See Docket Entry 16 at CM/ECF 52. She was notified of her appeal rights, which she exercised. In her appeal, though, she never alleged that she did not intend to apply for retirement benefits on September 1, 2020. She instead alleged that she is entitled to retirement benefits effective January 22, 2019, i.e., her sixty-second birthday.

Third, when Gaither appeared before the ALJ, the ALJ began the hearing by framing the issue before him as being whether Gaither is entitled to an earlier onset of her retirement benefits. As the hearing progressed, the ALJ learned of a second issue, i.e., whether Gaither was entitled to continued Medicare dental coverage. He addressed both issues in his decision. As a part of addressing the first issue, he accepted as given that Gaither applied for retirement benefits effective September 1, 2020. Gaither at no point disabused the ALJ of his view of the issues.

Gaither notes that there is "no paper trail of [her] completing, signing and submitting an application" for retirement benefits. See Docket

Entry 18 at CM/ECF 2. Although Gaither is correct in that she did not actually complete, sign, and submit an application, she was deemed to have done so during her conversation with Jones. As to whether a mere telephone conversation can set an application in motion, and as to whether Gaither's conversation with Jones did so in this instance, the Court adopts the following excerpt from the Commissioner's brief:

> ... the agency documents an applicant's intent to file an application (and the applicant's affirmation that the provided information is correct) by having the interviewer make notations in agency records after orally confirming this information with the applicant. [Citation omitted]. The application information was included in a mailing addressed to ... Gaither (Tr. 99-105). That document confirms that ... Gaither was applying for all Title II benefits for which she was eligible, including old-age insurance benefits, and that she wanted her benefits to begin as soon as possible. ...

See Docket Entry 22 at CM/ECF 10.

The Commissioner also makes note of a matter that bears repeating here, a representation the Court adopts. The representation is as follows:

> The Commissioner notes that a conclusion that ... Gaither had never applied for retirement ... benefits would not lead to the outcome she appears to seek. If she did not apply for retirement ... benefits in September 2020 and wished for that application to be deleted, ... Gaither would not have been eligible for Title II benefits at any time. As a result, the

retirement ... benefits payments she has received over the last
several years would become overpayments. ...

See Docket Entry 22 at CM/ECF 11.

Gaither alternatively maintains that she is entitled to retroactive
retirement benefits. Specifically, she maintains that she is entitled to
retirement benefits for the twenty month period between January 22,
2019, i.e., her sixty-second birthday, and September 1, 2020, i.e., the date
she was deemed to have filed her application for retirement benefits.

The ALJ found that Gaither is not entitled to retroactive retirement
benefits because she was "under the full retirement age" at the time she
was deemed to have filed an application for retirement benefits, see
Docket Entry 16 at CM/ECF 47, and there was no evidence that she was
mis-informed about her right to file an earlier application. Substantial
evidence on the record as a whole supports the ALJ finding for the following
reason set forth by the Commissioner, a reason the Court adopts in full:

> ... some of ... Gaither's statements suggest a belief that
> she should be receiving retirement insurance benefits effective
> with the first month for which she was potentially eligible for
> it had she filed an application, rather than the month in which
> her application was actually filed. See, e.g., Tr. 32-33
> (testimony), 53-56 (reconsideration paperwork). She explained
> to the ALJ that she would have been entitled to more money
> for January 2019 through mid-2020 if she started receiving

retirement insurance benefits when she turned 62. <u>See</u> Tr. 33 ("I mean I would have had more benefits if, if they had did it, or, if, if, it is a reduction of benefits. But I didn't, wasn't allowed to get the benefits that I was entitled to if I was entitled to get them in January of 2019.").

However, an individual must file an application for Title II benefits to be eligible to receive those benefits. [Citation omitted]. Congress has provided by statute that a claimant who is younger than full retirement age — and thus will be subject to a reduction in their retirement insurance benefits monthly amount due to filing early — cannot receive retirement insurance benefits "for any month prior to the month in which he or she files an application for benefits . . . ." [Citations omitted]. Because ... Gaither's full retirement age was 66 ½, [citations omitted], this provision applied to her and she could not receive retirement insurance benefits ... for any month prior to the month of her application. ...

... Gaither would need to identify a Title II application or protective filing that allowed her application to be deemed filed on an earlier date. As the ALJ noted, ... Gaither was 55 when she applied for and received SSI benefits ... Thus, she was not even potentially eligible for retirement insurance benefits ... at the time of this application, and it cannot be used to establish a filing date for a retirement insurance benefits application. She does not allege the existence of any redetermination that occurred between the date on which she attained age 62 in January 2019 and her September 2020 redetermination. Therefore, there was no Title II application filed prior to September 2020 on which benefits could be paid. The statute precludes payment of benefits for any month prior to September 2020 on the application filed that month. ...

<u>See</u> Docket Entry 22 at CM/ECF 8-9.

Gaither last challenges the cancellation of her dental coverage with Delta Dental. Although she currently has dental insurance, she no longer has dental insurance provided by Delta Dental, and her dentist of choice does not accept the coverage provided by her new carrier.

The ALJ found that there is nothing in the Social Security Act requiring a provider to continue coverage if the Medicare state program chooses to convert coverage, and Gaither is not entitled to "continued coverage under her former Medicare Part B provider." See Docket 16 at CM/ECF 48. Substantial evidence on the record as a whole supports the ALJ finding for at least two reasons.

First, Gaither has failed to show some connection between her entitlement to retirement benefits and the loss of her Delta Dental insurance coverage. The Court certainly knows of no connection.

Second, assuming there is some connection, the Commissioner is correct that Gaither's loss of her Delta Dental insurance coverage would not be "redressable by a judgment against the Commissioner." See Docket Entry 22 at CM/ECF 12 n.3. In fact, the Court knows of no scenario in which it could order the Commissioner to have Gaither placed back on Delta Dental's roll of insureds.

For these reasons, the Court finds that the ALJ's findings are supported by substantial evidence on the record as a whole, and no legal error occurred. Gaither's complaint is dismissed, and all requested relief is denied. Her pending motions for ruling are also denied. <u>See</u> Docket Entries 24, 25. Judgment will be entered for the Commissioner.

IT IS SO ORDERED this 21st day of August, 2024.


_____
UNITED STATES MAGISTRATE JUDGE